**JOHN N. JOHN, JR., INC.**

v.

**BRAHMA PETROLEUM CORPORATION.**

**Civ. A. No. 87–2174–LC.**

United States District Court,
W.D. Louisiana,
Lake Charles Division.

Nov. 18, 1988.

Noble M. Chambers, Chambers & Trahan, Crowley, La., for plaintiff.

G. Earl Humphries, Humphries & Humphries, Alexandria, La., for defendant and intervenor.

## OPINION

VERON, District Judge.

This matter arises out of a seizure of property based on the failure to pay for freight shipments. Plaintiff, John N. John, Jr., Inc., seeks to recover the value of services rendered. Defendant at trial was Brahma Petroleum Corporation, a Texas corporation, for whom the plaintiff transported certain products. Torque Petroleum Products, Inc., a Texas corporation, was an intervenor. The trial was held October 17, 1988.

## BACKGROUND

John N. John, Jr., Inc., filed suit on September 14, 1987 in the Calcasieu Parish District Court seeking a writ of attachment against property held in the Eastlake Oil Terminal in the name of Brahma Petroleum Corporation. The plaintiff had hauled a certain quantity of oil pitch to the Eastlake Oil Terminal for Brahma Petroleum, Inc. The bill sued upon was incurred for those expenses.

Brahma subsequently removed the case to federal court based on diversity jurisdiction. Torque Petroleum Products, Inc., a

Texas corporation domiciled in Dickenson, Texas promptly filed a Motion to Dissolve the writ of attachment, alleging that on September 8, 1987, six days prior to the suit being filed by plaintiff, Torque had purchased from Brahma the same oil products seized by John N. John pursuant to the writ. Torque also claimed damages for wrongful attachment.

## ANALYSIS OF LAW

### A. Notice and Due Process

■ Plaintiff attached defendant's property based on defendant's non-resident status. The grounds for attachment are outlined in Louisiana Code of Civil Procedure Article 3541:

A writ of attachment may be obtained when the defendant:

(1) Has concealed himself to avoid service of citation;

(2) Has mortgaged, assigned, or disposed of his property or some part thereof, or is about to do any of these acts, with intent to defraud his creditors or give an unfair preference to one or more of them;

(3) Has converted or is about to convert his property into money or evidences of debt, with intent to place it beyond the reach of his creditors;

(4) Has left the state permanently, or is about to do so before a judgment can be obtained and executed against him; or

(5) Is a nonresident who has no duly appointed agent for service of process within the state.

Defendant first argues that subsection (5) is unconstitutional, citing *Fuentes v. Shevin,* 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972), wherein the Supreme Court struck down Florida and Pennsylvania prejudgment replevin statutes. This assertion is without merit. *Fuentes* left untarnished the doctrine of *Ownbey v.*

*Morgan,* 256 U.S. 94, 41 S.Ct. 433, 65 L.Ed. 837 (1921), which upheld the constitutionality of attachment of the property of a nonresident in order to obtain jurisdiction.

Further defendant's argument disregards Article 3541 as analyzed by cases subsequent to *Fuentes.* Due process can be protected without prior notice. In *Mitchell v. W.T. Grant Co.,* 416 U.S. 600, 94 S.Ct. 1895, 40 L.Ed.2d 406 (1970), the court upheld the Louisiana sequestration procedure which was not drafted to be limited to certain narrow circumstances as is Article 3541. *See also Spencer v. Terebelo,* 373 So.2d 200 (La.App.1979). In upholding the Louisiana law, the Court concluded:

To summarize, the Louisiana system seeks to minimize the risk of error of a wrongful interim possession by the creditor. The system protects the debtor's interest in every conceivable way, except allowing him to have the property to start with, and this is done in pursuit of what we deem an acceptable arrangement *pendente lite* to put the property in the possession of the party who furnishes protection against loss or damage to the other pending trial on the merits. 416 U.S., at 618, 94 S.Ct., at 1900.[1]

Though the Supreme Court has struck down certain states' attachment statutes, decisions have consistently upheld the validity of Louisiana's procedure. In *North Georgia Finishing, Inc. v. Di–Chem, Inc.,* 419 U.S. 601, 95 S.Ct. 719, 42 L.Ed.2d 751 (1975) the Court expressly distinguished the Louisiana provisions from those laws which violated due process. The Court cited the provisions requiring the writ to be issuable only by a judge upon the filing of an affidavit going beyond mere conclusory allegations and clearly setting out the facts entitling the creditor to sequestration. In addition, the Louisiana law was praised in that it expressly entitled the debtor to an

---

**1.** The Court in *Mitchell* argued: "Of course, as in *Fuentes,* consideration of the impact on the debtor remains. Under Louisiana procedure, however, the debtor, Mitchell, was not left in limbo to await a hearing that might or might not 'eventually' occur, as the debtors were under the statutory schemes before the Court in *Fuentes.* Louisiana law expressly provides for an immediate hearing and dissolution of the writ 'unless the plaintiff proves the grounds upon which the writ was issued.' Art. 3506." 416 U.S., at 618, 94 S.Ct., at 1905.

immediate hearing after seizure and to dissolution of the writ absent proof by the creditor of the grounds on which the writ was issued. 419 U.S., at 607, 95 S.Ct., at 722.

### B. Jurisdiction Over Defendant

■ Defendant next suggests that the State of Louisiana can not exercise jurisdiction over him, given that his only contact with the state is the property located within the state. Defendant's reliance on *Shaffer v. Heitner*, 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977) is misplaced. *Shaffer* held that the due process requirement of "minimum contacts" applies also to quasi-in-rem jurisdiction. To sustain such jurisdiction, a connection must exist among the defendant, the forum and the claim. The Court stressed that if the only connection between the defendant and the forum is that the Defendant's property is in the state and that the claim is unrelated to the property, no jurisdiction exists. *Shaffer* is inapposable here. In *Shaffer* the sequestered property was unrelated to the cause of action; in this case, the property attached is the very subject of the cause of action. Defendant has produced no evidence of a lack of contact with the state.

In addition, since Brahma contracted to do business in Louisiana, "purposefully avail[ing] itself of the privilege of conducting activities within" Louisiana, this court perceives no unfairness to the defendant in finding sufficient contacts necessary for a state to exercise jurisdiction. *Hanson v. Denckla*, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958).

### C. The Validity of the Contract

■ Brahma's position is that a valid contract was executed on September 8, 1987, six days prior to the seizure by John N. John. Thus, defendant argues, John N. John, attempting to recover monies owed by Brahma, seized property that no longer belonged to Brahma. Several aspects of the contract between Brahma and Torque arouse curiosity. The contract, which involved hundreds of thousands of dollars was executed in handwritten form in haphazard fashion; in a telephone conversation

informing the plaintiff of the sale, the attorney who drafted the contract assured the plaintiff that evidence of a wire transfer of funds would be provided and then later recalled that no such transfer had been made; in fact, no objective evidence of the validity and date of the sale other than the self-serving testimony of interested parties exists. These factors contribute to the court's reservations as to the origin of the contract.

However, even were the court to have no reservations about the contract or the credibility of Defendant's witnesses, the court finds that plaintiff's seizure was effective against Brahma because the object of the sale had not been delivered. Article 518 of the La.Civil Code states:

> The ownership of a movable is voluntarily transferred by a contract between the owner and the transferee that purports to transfer the ownership of the movable. Unless otherwise provided, the transfer of ownership takes place as between the parties by the effect of the agreement and *against third persons when the possession of the movable is delivered to the transferee.* (emphasis added)

In order for ownership to have transferred against third persons, delivery must occur. *Le Gardeur International, Inc. v. Ascension Construction Corp.*, 504 So.2d 587 (La.App. 4 Cir.1987) Civil Code Article 2477 defines delivery under Louisiana law as "the transferring of the thing sold into the power and possession of the buyer." Civil Code Article 2478 provides:

> The tradition of delivery of movable effects takes place either by the real tradition, or by the delivery of the keys of the buildings in which they are kept; or, even by the bare consent of the parties, if the things cannot be transported at the time of the sale, or if the purchaser had them already in his possession under another title.

Defendant argues that bare consent of Torque and Brahma is sufficient to trigger delivery. The court rejects this position and finds that no delivery had occurred at the time of seizure. Since the holder of the oil pitch was Eastlake Oils, Inc., delivery was impossible absent notification of that

party. Certainly Eastlake would not accept a change in ownership until notified by the transferor, Brahma. Evidence produced at trial establishes that Eastlake was unaware of a sale until after September 14, the date of plaintiff's attachment. Defendant's exhibit 2, Plaintiff's exhibit 3. Notations on a letter received by Eastlake on October 1, 1987 informing Eastlake of the sale indicate that Eastlake required a notarized agreement from Brahma before Eastlake would release the material to Torque. Thus, the "keys of the building" were not delivered until weeks after the attachment. No evidence admitted proves any notification of Eastlake prior to the September 14, 1987 attachment.

While bare consent in some cases may ordinarily be sufficient to effectuate delivery, this court finds that the holder of the product is a party that must provide consent. This court is unpersuaded by *Reeves v. G & G Pumping Co.*, 151 So. 679 (La. App. 2d Cir.1934) and other cases string-cited by Defendant. Eastlake in no way tendered any control to Torque until being properly notified. While a contract may have existed between Brahma and Torque on September 8, 1987, Article 518 holds that transfer of ownership against third persons takes place upon delivery.[2] Because the court finds no evidence of delivery, as to third persons, Brahma was still the owner of the oil pitch when seized. Therefore, John N. John's attachment was valid.

**D. Torque's intervention**

Claiming that it is the rightful owner of the material that was seized, Torque claims damages against John N. John for wrongful attachment. Given that the court finds no wrongful attachment, Torque's claim is dismissed.

**CONCLUSION**

Even if Brahma Petroleum and Torque signed a contract on September 8, 1987, the sale is not effective against third parties until delivery occurs. The appropriate delivery in this case would have been the notification to the holder of the product, Eastlake Oils, Inc. This delivery was not performed until after the attachment by John N. John occurred. The attachment being ruled valid, John N. John should recover. No controversy exists as to the size of the debt owed by Brahma to John N. John; therefore a judgment is entered in favor of plaintiff and against Brahma Petroleum Corporation in the amount of NINETEEN THOUSAND FIVE HUNDRED SEVENTY AND 54/100 ($19,570.54) DOLLARS with interest from judicial demand until paid, the plaintiff to be paid in principal, interest and costs from the proceeds of the sale of the property subject to the attachment.

The constitutional issues raised by defendant, along with the intervenor's claim for wrongful attachment, are DENIED.

---

**2.** Defendant argues that no notice of John N. John is necessary. Without ruling on this issue, the court concerns itself with notification of a different third party—the holder of the oil pitch, Eastlake. Delivery is required to effectuate a transfer of possession against third persons.

Art. 518. The court's holding is that delivery cannot take place until the holder of the product recognizes that a sale has taken place, which in this case could not occur before Eastlake received notice of the sale.