536 So.2d 830 (1988)
Cyrus P. GIROIR, Sr. and Shirley P. Giroir
v.
Cyrus P. GIROIR, Jr., Connie Hamer Giroir, and her Interest, Ownership and Inheritance In and To the Succession of Milton H. Hamer.
No. 88 CW 0868.
Court of Appeal of Louisiana, First Circuit.
December 20, 1988.
*831 Sostenes Ruiz, III, Morgan City, for plaintiffs.
Frank J. Judycki, Judycki & Landry, Morgan City, for Cyrus P. Giroir, Jr., Connie Hamer Giroir and her interest, Ownership Succ. of Milton H. Hamer, defendants.
Vincent J. Saitta, Lafayette, for Connie Hamer, defendant.
Before WATKINS, CRAIN and ALFORD, JJ.
WATKINS, Judge.

FACTS
Cyrus P. Giroir, Jr. (also known as Rusty) and Connie Hamer Giroir were husband and wife in 1985. At that time they borrowed money from Rusty's parents, Cyrus Giroir, Sr. and Shirley P. Giroir. The indebtedness was represented by two promissory notes dated December 9, 1985 and July 7, 1986. The total sum due on the notes was $115,000. There was also a loan made for $37,500 which was not represented by a note. The loans were secured by a pledge of Connie's interest, ownership and inheritance of her father's succession.[1]
On September 29, 1987, a partial judgment of possession was rendered in Mr. Hamer's succession which recognized Connie as the owner of certain shares of stock in various companies, and as a 3/16th owner of an immovable located in St. Mary Parish.
Connie moved to Texas in August of 1986. Rusty followed her there two months later. They were divorced in December of 1987, however, they were both still living in Texas. On January 19, 1988, Cyrus Sr. and Shirley Giroir filed a suit against them in the Sixteenth Judicial District Court and alleged Connie and Rusty had defaulted on the loans, they owed the plaintiffs $164,016.16, with interest, and the property Connie acquired as a result of her interest in her father's succession should be seized under a writ of attachment. The plaintiffs cited the pledge of the interest in the succession as authority for the seizure of the property and stated B.J. Rawls and Camille Cutrone, attorneys for the succession of Milton Hamer, and/or Jackie Hamer, administratrix of the succession, would be in possession of the stocks and real estate of the succession.
The writ of attachment was issued on January 19, 1988. The sheriff issued notices of seizure of the shares of stock in the companies, and in the 3/16ths interest in the immovable, to Connie and Rusty through a court-appointed attorney, Mr. Frank Judyki, who was served on January 19, 1988. The sheriff recorded the notices of seizure on Mr. Judyki on January 27, 1988. The notices of constructive seizure of the immovable *832 property were also recorded after service.
On January 29, 1988, the plaintiffs filed an amended petition and asked that E.F. Hutton be served with the writ of attachment, because it allegedly had possession and control over the shares of stock. It was served, and allegedly E.F. Hutton honored the seizure and refused to return certain stocks to Connie Hamer in Texas.
Rusty moved back to Louisiana, and has not contested any part of the petition. In fact, he has cooperated fully with his parents, and has testified on their behalf.
Connie filed a declinatory exception raising the objection of lack of personal jurisdiction and a motion to dissolve the writ of attachment. A hearing was held on the motion and the exception on April 21, 1988. Judge Robert Fleming heard the evidence and decided the stocks and immovable property had properly been seized; therefore, the Louisiana court had jurisdiction over Connie Hamer by virtue of the constructive seizure of the property located in the State of Louisiana.
Connie filed this application for supervisory writs seeking review of the trial court's judgment which denied the dissolution of the writ of attachment and which overruled the exception raising the objection of lack of jurisdiction.

ATTACHMENT OF STOCK CERTIFICATES

(Issue No. 1)
The relator contends that the trial court improperly denied the motion to dissolve the writ of attachment as it relates to the shares of stock she inherited from her father, because the stock certificates were not located in Louisiana at the time of their alleged seizure on January 19, 1988, nor were the stock certificates in Louisiana when E.F. Hutton was served with the writ of attachment later in January of 1988. As indicated by the witness from E.F. Hutton, Ms. Nanette Fuselier, all of the stock certificates, except for the Toth Aluminum Corporation (Toth) certificates, had been sent to the New York office of E.F. Hutton on November 27, 1987, so that the certificates could be reissued in the names of Mr. Hamer's heirs. E.F. Hutton's New York office then sent the certificates to the respective companies' transfer agents; therefore, not even E.F. Hutton had possession of the certificates.
Plaintiffs concede, and the record also establishes, that with the exception of the Toth stock, all of the stock certificates were out of the State of Louisiana at the time of the attempted seizure. Plaintiffs contend, however, that the Toth certificates were in Louisiana at this time. This is supported by the record since the parties contend that Toth is a Louisiana corporation; and Ms. Fuselier testified that the Toth stock certificates were in Toth's possession since they were their own transfer agent.
LSA-C.C.P. art. 9 provides as follows:
A court which is otherwise competent under the laws of this state has jurisdiction to render a money judgment against a nonresident not subject personally to the jurisdiction of the court only if the action is commenced by an attachment of his property in this state. Unless the nonresident subjects himself personally to the jurisdiction of the court, the judgment may be executed only against the property attached.[2]
The Official Revision Comments under article 9 make reference to those under LSA-C.C.P. art. 8. Comment (e) of the Official Revision Comments under article 8 states, in pertinent part, as follows:
The property, with respect to the negotiable instrument, and with respect to the corporation stock certificate allowed by the law of the state of incorporation, would be the instrument itself; and if this would not be in Louisiana, the court would have no jurisdiction in rem.
*833 Article 9 contemplates the assertion of quasi in rem jurisdiction over the defendant if property is located in this state. In addition, LSA-C.C.P. art. 3503 provides for attachment of defendant's property in the possession of third persons. However, since the majority of the stock certificates (all of the stock certificates except for the Toth certificates) were not in Louisiana when the petition was filed and the writ issued, they were not subject to attachment under LSA-C.C.P. arts. 9 and 3501 et seq.[3] The Toth stock certificates were also not properly seized since neither E.F. Hutton nor the relators were in possession of the certificates when served with the writ of attachment.[4] The trial court erred in refusing to dissolve the writ of attachment as to the shares of stock, and in basing jurisdiction over defendant on the attachment of the stock.

ATTACHMENT OF INTEREST IN IMMOVABLE

(Issue No. 2)
The relator next contends that the trial court erred in failing to dissolve the writ of attachment as it relates to her 3/16th undivided interest in the immovable property. Relator acknowledges that although her undivided interest in her father's succession, or her undivided interest in the realty, could not be actually seized or attached, her said interest was subject to constructive seizure pursuant to LSA-R.S. 13:3851 et seq. See Eden v. Johnson, 176 So.2d 476 (La.App. 2d Cir.1965).[5] However, the relator contends that according to Eden, the constructive seizure was not done in conformity with the notice requirements of LSA-R.S. 13:3852, which provides in part that "[i]f the immovable property to be seized is owned by more than one party, the sheriff shall make an additional notice for each additional party."[6]
The law is well settled that a writ of attachment is an extremely harsh remedy which is only extended where the formalities of the law have been strictly and literally complied with. See Hancock Bank v. Alexander, 256 La. 643, 237 So.2d 669 (1970). However, we do not agree with relator's suggested interpretation of section 3852 in regard to these facts.
Since this is a constructive rather than an actual seizure, the seizure of relator's undivided interest in the immovable has no adverse effect on the owners of the remaining undivided interest in the immovable. In this case, the property seized is not owned by more than one party since the writ effected a constructive seizure of only relator's 3/16th undivided interest. Therefore, the owners of the remaining undivided interest in the immovable, which was not constructively seized, were not entitled to notice under LSA-R.S. 13:3852. We disagree with any statement, express or implied, to the contrary in Eden. If plaintiffs' had sought to have the entire property constructively seized, then all owners would have been entitled to notice. However, such was not the case here.
Accordingly, we do not find that the trial court erred in maintaining the writ of attachment as to relator's 3/16th undivided interest in the immovable property.

REQUIREMENTS OF PETITION

(Issue No. 3)
Relator also contends the plaintiffs' failure to attach the promissory notes to *834 the petition constituted a defect on the face of the pleadings, especially since the petition states that the promissory notes were attached thereto and made a part thereof.
We disagree. LSA-C.C.P. art. 3501 provides, in pertinent part, as follows:
A writ of attachment or of sequestration shall issue only when the nature of the claim and the amount thereof, if any, and the grounds relied upon for the issuance of the writ clearly appear from specific facts shown by the petition verified by, or by the separate affidavit of, the petitioner, his counsel or agent.
The petition clearly alleges that the defendants are nonresidents without any duly appointed agent for service of process within the state, thus providing the "grounds relied upon for the issuance of the writ." See LSA-C.C.P. art. 3541(5). In addition, the petition clearly sets out "the nature of the claim and the amount thereof" as reflected by the following paragraphs therein:

1.
That CONNIE HAMER GIROIR, domiciled in Texas, and CYRUS P. GIROIR, JR., also of Texas, husband and wife, but presently living separate and apart, are legally indebted, in solido, unto Petitioners in the sum of ONE HUNDRED SIXTY FOUR THOUSAND SIXTEEN AND 16/100 ($164,016.16), with interest thereon at the rate of 11.875% percent per annum, from December 22, 1987, until paid, for the following reasons, to-wit:

2.
Petitioners are the holders of certain promissory notes executed by the Defendants in the Principal sums of $15,000.00 and $100,000.00, dated December 9, 1985 and July 7, 1986, respectfully, said original notes attached hereto and made a part hereof, and both notes presently due and outstanding.

3.
That in consideration of the above loans by CYRUS P. GIROIR, SR. or with his guarantee to Defendants, past, present or future, Defendants on December 9, 1985, executed a pledge and pawn on all of their ownership, inheritance and other rights and interests in and to the Succession of Milton H. Hamer and the former property of the decedent therein, Milton H. Hamer, a copy of which document is attached hereto and made a part hereof.

4.
That on December 22, 1987, CYRUS P. GIROIR, SR., for the sole benefit of Defendants, was compelled to pay the sum of $7,462.57 past due interest on loans for the benefit of Defendants; and sign a promissory note for the sum of $133,943.00 due Patterson State Bank for funds extended for the sole benefit of Defendants, a copy of said note is attached hereto and made a part hereof.

5.
That demands have been made on said matured loans and payments have been refused, except for the sum of $15,000.00 applied to a personal no-note loan of $37,500.00 made to Defendants. The notes are now past due and wholly unpaid despite amicable demands for payment.
The allegations of the petition were also verified by the plaintiffs.
Relator has cited no authority, nor can we find any, which requires the attachments of any additional evidence to the petition in order to obtain a writ of attachment. The proper introduction of the promissory notes is an evidentiary question more properly directed to the merits of the claim, or main demand, and which should not be inquired into on the motion to dissolve the writ. Cf. Tucker & Schonekas v. Al Dohmann Chevrolet, Inc., 260 So.2d 99 (La.App. 1st Cir.), writ denied, 262 So.2d 37 (La.1972).

DECREE
For the foregoing reasons the district court is ordered to dissolve the writ of attachment insofar as it affects the stock certificates. In all other respects the relief sought by relator is denied. Costs of this *835 application are assessed one-half against relator and one-half against plaintiffs.
WRIT GRANTED IN PART, AND DENIED IN PART.
NOTES
[1] Connie's father, Milton Hamer, died on May 20, 1985.
[2] The record does not reflect that the defendant subjected herself personally to the jurisdiction of the court. See LSA-C.C.P. art. 7.
[3] Even if the writ of attachment constituted a constructive seizure of Connie's undivided interest in the succession, rather than an actual attachment of the individual property (see Mingledorff v. American Bank And Trust Company In Monroe, 420 So.2d 463 (La.App. 2d Cir.), writ denied, 423 So.2d 1161 (La.1982); Van Der Karr v. Stead, 21 So.2d 111 (La.App. 1st Cir.1945); First Nat. Bank & Trust Co. Of Vicksburg v. Drexler, 171 So. 151 (La.App. 2d Cir.1936)), the result is the same. See Official Revision Comments (c) and (e) under LSA-C.C.P. art. 8.
[4] Plaintiffs also argue that the seizure of the Toth stock was valid pursuant to LSA-R.S. 10:8-317(1). However, the record does not establish that Toth was ever served with a writ of attachment.
[5] See also the jurisprudence cited supra footnote 3.
[6] The record before us contains no indication that the relator ever raised this issue in the district court. See LSA-C.C.P. art. 1635.