644 So.2d 778 (1994)
Marion J. ALESSI
v.
Olive Savoie BELANGER.
No. CA 93 2047.
Court of Appeal of Louisiana, First Circuit.
October 7, 1994.
*780 Harold J. Adkins, Baton Rouge, for plaintiff/1st appellant.
Kenneth L. Riche, Jo Ann Levert, Baton Rouge, for defendant/2nd appellant.
James M. Ross, Baton Rouge, for appellee Atty. General's Office.
Before CRAIN, FOIL and WHIPPLE, JJ.
WHIPPLE, Judge.
This is an appeal by plaintiff from a judgment of the trial court, dismissing plaintiff's claim with prejudice. Defendant also appeals the dismissal of her reconventional demand with prejudice. For the following reasons, we affirm.

FACTS AND PROCEDURAL HISTORY
On October 9, 1987, plaintiff, Marion J. Alessi, filed a Petition for Writ of Attachment in the Nineteenth Judicial District Court, seeking attachment of defendant's immovable property and judgment for an outstanding balance due for the sale of an emerald cut diamond ring.[1] In the petition, plaintiff *781 alleged that defendant, Olive Savoie Belanger, owed him an outstanding balance of $10,833.54 and that defendant was a non-resident of Louisiana, residing in Charlotte, North Carolina. Thus, plaintiff sought the issuance of a writ of attachment against defendant's home, located in East Baton Rouge Parish.
On the same day the petition was filed, an order was signed by the trial court, appointing an attorney to represent defendant and ordering that a writ of attachment issue, upon the furnishing of security by plaintiff, seizing and attaching the property of defendant located in East Baton Rouge Parish. Defendant's property was attached by the sheriff of East Baton Rouge Parish on December 2, 1987, and plaintiff was appointed custodian.
Thereafter, defendant filed a declinatory exception raising the objection of lack of quasi in rem jurisdiction and seeking dissolution of the writ of attachment. In support of her exception, defendant alleged that at all pertinent times, she was a Louisiana domiciliary and a resident of Louisiana at the time of the attachment and subject personally to the jurisdiction of the court. Thus, defendant contended, the court lacked quasi in rem jurisdiction.
After a lengthy hearing on the exception, the trial court denied defendant's exception and motion to dissolve attachment. Thereafter, defendant filed a motion for new trial, claiming that after the hearing, she had discovered new evidence showing that alterations and additions had been made to certain documents considered by the court at the hearing on the exception. A hearing on the motion was held on October 7, 1988, and by judgment signed October 25, 1988, the trial court denied the motion. Defendant subsequently sought supervisory writs with this court, the Louisiana Supreme Court, and the United States Supreme Court, all of which were denied.
Defendant also filed an answer, third party demand and reconventional demand. In her answer, defendant contended that she was not the purchaser of the diamond wedding ring, but was instead a third party benefactor of the ring. Named as third party defendant was Gennard John Melore, whom she asserted was the true purchaser of her diamond wedding ring.[2] In her reconventional demand against plaintiff, defendant averred that plaintiff had wrongfully attached her property and that, as a result of the wrongful attachment, she had sustained damages for which she sought recovery from plaintiff.
Defendant subsequently amended her reconventional demand to allege that her attached property had been vandalized during the time in which plaintiff was the appointed custodian and that, as custodian, plaintiff was liable for the damages incurred. Defendant again amended her reconventional demand to challenge the constitutionality of Louisiana attachment or seizure proceedings, including LSA-C.C.P. art. 3501 et seq., art. 3541 et seq., and art. 3571 et seq, and Louisiana quasi in rem jurisdiction as set forth in LSA-C.C.P. art. 9. Defendant further alleged that the taking of her home occurred at the instance of Marion Alessi, in joint participation with state actors, in violation of her civil rights, for which she sought recovery pursuant to 42 U.S.C. § 1983. The Attorney General was served with a copy of this supplemental and amending reconventional demand, and an answer was filed by the Attorney General on October 27, 1992.
During the pendency of these proceedings, defendant also filed a motion to dissolve and claim for damages, requesting that the court dissolve the writ of attachment. Defendant averred that plaintiff had requested in his original petition that the court commend the sheriff to "seize and attach" defendant's property, in the absence of any provision of law authorizing seizure of her property. Defendant further argued that the appointing of plaintiff as custodian of the property had deprived defendant of use of her property without due process of law and had resulted in damages being suffered by defendant. A *782 hearing on the motion was held on December 14, 1990 and by judgment rendered in open court on that day and signed on March 12, 1993, the trial court changed the attachment of defendant's home from a physical attachment to a constructive attachment and ordered that defendant be appointed custodian, effective December 14, 1990. The trial court referred the issue of damages resulting from the alleged improper attachment to trial on the merits.
Trial in this matter was held on March 11 and 12, 1993. Judgment was rendered in favor of defendant on the main demand, dismissing plaintiff's claim with prejudice, based upon the trial court's finding that Gennard J. Melore, and not the defendant, was the true purchaser of the diamond wedding ring. The trial court also dismissed defendant's reconventional demand, with prejudice, finding that defendant had failed to prove that any damages were sustained as a result of the alleged improper physical seizure. The trial court dissolved the writ of attachment encumbering defendant's home.
From this judgment, both parties appealed, assigning numerous errors. The assignments of error of the parties essentially present the following issues for review: (1) whether the trial court erred in finding that defendant was not liable for the purchase price of her diamond wedding ring and in dissolving the writ of attachment after trial on the merits; (2) whether the trial court erred in denying defendant's declinatory exception of lack of quasi in rem jurisdiction and motion to dissolve writ of attachment and rehearing on same; (3) whether the trial court erred in failing to award damages to defendant as the result of the issuance of the writ of attachment; (4) whether the trial court erred in failing to find that the writ of attachment violated due process and in failing to find that LSA-C.C.P. arts. 9, 3501 and 3544 are unconstitutional.

DEFENDANT'S LIABILITY FOR THE PURCHASE PRICE OF THE RING

(Plaintiff's Assignments of Error Nos. 1-5)
Plaintiff contends that the trial court erred in failing to find defendant contractually liable for the purchase price of her diamond wedding ring. Plaintiff argues that it was his intention to sell the ring to defendant, from the outset of the transaction, and that there is no basis to support the trial court's finding that defendant was not the intended purchaser. Plaintiff further contends that the trial court erred in failing to find that defendant and Gennard Melore were jointly obligated for the purchase price of the ring.
In reasons for judgment, the trial court stated that "all parties to the transaction in question understood, agreed and intended that Gennard J. Melore was in fact the true purchaser of the diamond ring" and then set forth at length the evidence and testimony supporting the court's factual findings and conclusions. An appellate court will not disturb the factual finding of the trial court unless it is manifestly erroneous or clearly wrong. For an appellate court to reverse a trial court's factual finding, it must find from the record that a reasonable factual basis does not exist for the finding of the trial court and that the record establishes that the finding is clearly wrong. Stobart v. State Department of Transportation and Development, 617 So.2d 880, 882 (La.1993).
Moreover, where there is a conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. Arceneaux v. Domingue, 365 So.2d 1330, 1333 (La.1978).
The testimony adduced at trial establishes that in February, 1987, defendant, a business acquaintance of plaintiff, informed plaintiff that she was going to be married to Gennard John Melore, a resident of Charlotte, North Carolina. In response, plaintiff showed defendant several diamond wedding rings. At some point, defendant expressed interest in an emerald cut diamond ring.
According to plaintiff, defendant selected a ring and gave plaintiff the address in North Carolina where she wanted the ring shipped. *783 However, on February 10, 1987, before plaintiff had shipped the ring, defendant came into the store, picked up the ring and signed an invoice evidencing her purchase of the ring and its delivery to her.
On the other hand, defendant testified that when plaintiff showed her the emerald cut diamond ring, she informed plaintiff that she and her fiance, Melore, had not yet discussed the purchase of her wedding ring. According to defendant, plaintiff asked her for Melore's telephone number, called Melore, and gave Melore a "sales pitch" about the ring. Defendant testified that during the telephone conversation, plaintiff told Melore that he would give Melore a good deal because he needed to sell the merchandise and that he would not charge Melore sales tax since Melore was a North Carolina resident. According to defendant, plaintiff and Melore then agreed to the price, and plaintiff never discussed the actual price of the ring with her.[3]
On February 10, 1987, the day defendant picked up the ring, Melore authorized plaintiff, through a telephone conversation, to charge the purchase to his American Express credit card. However, American Express did not approve the charge. Despite not having received payment for the ring that day, plaintiff allowed defendant to take the ring. Plaintiff did not ask defendant for any payment on the ring that day, and according to defendant, he did not inform her that American Express had not authorized the charge. Plaintiff completed a sales receipt, listing defendant as the purchaser, and upon receiving the ring from plaintiff, had defendant sign the receipt on the line marked "Buyer's Signature."
Subsequently, plaintiff received two $3,000.00 checks from Melore, both of which were returned due to insufficient funds. According to plaintiff, he then took steps to collect the balance owed on the ring through telephone calls to both Melore and defendant. However, defendant testified that plaintiff made no demands for payment to her and that she was not aware that her wedding ring had not been paid for until she was notified of the present lawsuit.
The trial court heard the evidence firsthand and had the opportunity to observe the demeanor of the witnesses. The court found as a fact that defendant was not the purchaser of the diamond ring, and that Gennard Melore was in fact the purchaser.[4] After carefully reviewing the entire record in this matter, we cannot say that the trial court's evaluations of credibility are not reasonable or that its determination that defendant was not the purchaser of the diamond wedding ring is manifestly erroneous.
In a related assignment of error, plaintiff contends that the trial court erred in dissolving the writ of attachment in its judgment after trial on the merits. However, where plaintiff has failed to win on the merits of his claim, there is no basis for continuation of the writ of attachment. See generally C.C.P. arts. 3501-3545.
For the reasons expressed above, we find no error on the part of the trial court in dismissing plaintiff's claim. Thus, we likewise find no error in the trial court's judgment dissolving the writ of attachment.
Plaintiff's assignments of error lack merit.

DENIAL OF DEFENDANT'S EXCEPTION OF JURISDICTION AND MOTION TO DISSOLVE

(Defendant's Assignments of Error Nos. 6, 7, 8, 10 & 11)
Defendant contends that the trial court erred in denying her declinatory exception of lack of quasi in rem jurisdiction, motion to dissolve and motion for new trial or rehearing *784 on same. Defendant argues that the writ of attachment, the means through which the court attempted to gain jurisdiction, was improvidently issued because it was ordered ex parte, with insufficient security, with no conservatory right of the creditor pleaded and without evidence of indebtedness by defendant for both rings. Moreover, defendant contends that she was a resident of Louisiana, making quasi in rem jurisdiction improper.
We turn first to defendant's argument that the trial court erred in denying her exception of lack of quasi in rem jurisdiction and motion to dissolve because she was in fact a resident of Louisiana. Louisiana Code of Civil Procedure article 9 provides the grounds for obtaining jurisdiction over the property of a nonresident as follows:
A court which is otherwise competent under the laws of this state has jurisdiction to render a money judgment against a nonresident not subject personally to the jurisdiction of the court only if the action is commenced by an attachment of his property in this state. Unless the nonresident subjects himself personally to the jurisdiction of the court, the judgment may be executed only against the property attached.
An action against a nonresident must be commenced by attaching the nonresident's property in this state, and the judgment may be executed only against that property. Smith v. Smith, 257 So.2d 446, 447 (La.App. 1st Cir.1972). The defendant, by contradictory motion, may obtain dissolution of a writ of attachment unless the plaintiff proves the grounds upon which the writ was issued. LSA-C.C.P. art. 3506. Once defendant files a motion to dissolve, the burden is shifted to plaintiff to establish the facts constituting grounds for issuance of the writ. Yorkwood Savings and Loan Association v. Thomas, 379 So.2d 798, 799 (La.App. 4th Cir.1980).
As the record reflects, an evidentiary hearing was conducted by the trial court on the merits of defendant's exception. After considering the evidence presented at the hearing on the exception, the trial court rejected defendant's arguments and found that plaintiff had carried his burden of proof in establishing the non-residency of defendant. The trial court rejected defendant's claims that the attachment had issued improvidently and denied the exception.
Thereafter, defendant applied for supervisory writs with this court, which writ application was denied on December 16, 1988, in proceedings bearing docket number 88-CW-1742 on the docket of this court. On February 24, 1989, defendant's application for supervisory and/or remedial writs of review of this court's action was denied by the Louisiana Supreme Court in docket number 89-CC-0139. On October 2, 1989, defendant's petition for writ of certiorari to the Supreme Court of Louisiana was denied by the Supreme Court of the United States in docket number 88-7341.
Insofar as this court is concerned, our prior ruling on the propriety of the issuance of the writ of attachment in this proceeding is the law of this case. The "law of the case" principle embodies the rule that an appellate court ordinarily will not reconsider its own rulings of law in the same case. Chamberlain v. State Department of Transportation and Development, 621 So.2d 1118, 1122 (La.App. 1st Cir.), reversed on other grounds, 624 So.2d 874 (La.1993). The doctrine is a discretionary guide and is not applicable in cases of palpable error or where, if the law of the case were applied, manifest injustice would occur. Sharkey v. Sterling Drug, Inc., 600 So.2d 701, 705 (La. App. 1st Cir.), writs denied, 605 So.2d 1099, 1100 (La.1992).
Although we find no palpable error or manifest injustice in the denial of defendant's exception in this case, we are mindful that a proper jurisdictional basis is a threshold requirement for a court to exercise the legal power and authority to hear a case and to grant the relief to which parties are entitled. Clark v. Clark, 600 So.2d 880, 882 (La.App. 1st Cir.), writ denied, 604 So.2d 1305 (La. 1992). Therefore, out of an abundance of caution, we shall address the merits of defendant's argument. See Sharkey, 600 So.2d at 705.
*785 A nonresident is defined in LSA-C.C.P. art. 5251(11), in pertinent part, as "an individual who does not reside in this state...." Whether a person is or is not a resident of a particular place is a question of law as well as fact, and is to be determined from all of the facts of each particular case. Bond v. Commercial Union Assurance Co., 407 So.2d 401, 408 (La.1981) (on rehearing). On appellate review, the trier of fact's determination of the question is entitled to great weight and the reviewing court should not substitute its opinion when the trial court's judgment is based on a reasonable interpretation of the evidence. Bond, 407 So.2d at 408.
The record shows that at the time plaintiff filed suit on October 10, 1987, defendant was residing in North Carolina and returned to Louisiana on November 5, 1987, leaving her furniture and household possessions in storage in North Carolina. Upon her return to Louisiana, defendant did not move back to her home in Baton Rouge, but was temporarily staying with her mother at her mother's home in Houma, Louisiana. At the time of the hearing, defendant still had a North Carolina bank account, driver's license and vehicle registration. Although defendant had not sold her home in Baton Rouge, virtually all of her possessions had been moved into her rented apartment in North Carolina or were in storage there.
Based on the evidence in the record herein, we find no error in the trial court's determination that defendant was a nonresident at the time plaintiff's petition for writ of attachment was filed.
We likewise find no merit in defendant's argument that the writ of attachment was improvidently issued because it was ordered ex parte. LSA-C.C.P. art. 3501 provides, in part, as follows:
A writ of attachment or of sequestration shall issue only when the nature of the claim and the amount thereof, if any, and the grounds relied upon for the issuance of the writ clearly appear from specific facts shown by the petition verified by, or by the separate affidavit of, the petitioner, his counsel or agent.
After issuance of the writ of attachment, defendant is authorized, pursuant to LSA-C.C.P. art. 3506, to seek dissolution of the writ of attachment by contradictory motion. Thus, the writ is obtained by a petition for an ex parte order, which is issued without previous hearings. The defendant may then assert a defense to the writ by a contradictory motion to dissolve. Johnson, Attachment and Sequestration: Provisional Remedies under the Louisiana Code of Civil Procedure, 38 Tul.L.Rev. 1, 25-26 (1963). Thus, we find no procedural irregularity in the issuance of the writ of attachment in this case simply because it was issued ex parte.
Defendant further contends that the writ of attachment was improvidently issued because the security plaintiff was required to furnish was insufficient. By order dated October 9, 1987, the trial court required plaintiff to furnish security in the amount of $250.00. LSA-C.C.P. art. 3544, which governs the amount of the security to be furnished by plaintiff, provides:
The security required for the issuance of a writ of attachment shall be for the amount of the plaintiff's demand, exclusive of interest and costs. If the writ is obtained on the sole ground that the defendant is a nonresident, the security shall not exceed two hundred fifty dollars, but on proper showing the court may increase the security to any amount not exceeding the amount of the demand. (Emphasis added).
Inasmuch as the writ of attachment issued solely on the grounds of defendant's nonresidence, LSA-C.C.P. art. 3544 dictated that the security to be furnished by plaintiff would not exceed $250.00 absent a special showing justifying an alternative amount. Because the trial court complied with LSA-C.C.P. art. 3544 in setting the amount of security to be furnished, we find that this argument also lacks merit.
Defendant next argues that issuance of the writ of attachment on the sole grounds of nonresidency, without a pleading to forestall waste or alienation, did not fully comply with law. LSA-C.C.P. art. 3541, which provides the grounds upon which a writ of *786 attachment may be obtained, sets forth five instances in which the writ may be obtained:
A writ of attachment may be obtained when the defendant:
(1) Has concealed himself to avoid service of citation;
(2) Has granted a security interest under Chapter 9 of the Louisiana Commercial Laws (R.S. 10:9-101, et seq.), or has mortgaged, assigned, or disposed of his property or some part thereof, or is about to do any of these acts, with intent to defraud his creditors or give an unfair preference to one or more of them;
(3) Has converted or is about to convert his property into money or evidences of debt, with intent to place it beyond the reach of his creditors;
(4) Has left the state permanently, or is about to do so before a judgment can be obtained and executed against him; or

(5) Is a nonresident who has no duly appointed agent for service of process within the state. (Emphasis added).
Thus, while one ground for obtaining a writ of attachment may be that the plaintiff seeks to forestall waste or alienation of the defendant's property, another separate ground for issuance of a writ of attachment is the nonresidency of the defendant, which requires no showing of an intent on the part of defendant to waste or alienate his or her property. Therefore, this argument also lacks merit.
Defendant further contends that plaintiff failed to present evidence of indebtedness by defendant for both the bride and groom rings and, thus, the trial court erred in denying her motion to dissolve the improvidently issued writ and her motion for new trial or rehearing. Louisiana Code of Civil Procedure article 3501 requires that the petition for writ of attachment clearly allege "the nature of the claim and the amount thereof and "the grounds relied upon for the issuance of the writ." In this case, the petition clearly alleges that defendant is a nonresident, thus providing the "grounds relied upon for the issuance of the writ." LSA-C.C.P. art. 3541(5); Giroir v. Giroir, 536 So.2d 830, 834 (La.App. 1st Cir.1988). Furthermore, the petition clearly sets out "the nature of the claim and the amount thereof," as reflected by the following paragraphs contained in the petition:
2.
As will appear from the itemized statement of account and invoice attached as an Exhibit hereto, in Baton Rouge, Louisiana, petitioner sold and delivered to the defendant the merchandise listed on the date and for the price shown thereon for which an outstanding balance of TEN THOUSAND EIGHT HUNDRED THIRTY THREE AND 54/100 ($10,833.54) DOLLARS remains.
3.
There have been no payments by the defendant on this account despite amicable demands by plaintiff.
The allegations of the petition were also verified by plaintiff.
Defendant has cited no authority, nor can we find any, for the proposition that, at the hearing on a motion to dissolve a writ of attachment, plaintiff must put on evidence to establish the merits of his demand. The merits of the main demand should not be inquired into on the motion to dissolve writ of attachment. Rather, the purpose of the motion to dissolve is to require the plaintiff to prove the grounds upon which the writ of attachment issued, that being, in the instant case, the nonresidency of defendant. Giroir, 536 So.2d at 834; see also Kaufman v. Gregory, 244 La. 766, 154 So.2d 392, 395 (1963). Thus, we find no merit in the argument that defendant's petition was not in compliance with the requirements as set forth in LSA-C.C.P. art. 3501.
Accordingly, we find no error by the trial court in denying her exception of lack of quasi in rem jurisdiction and motion to dissolve writ of attachment or in the court's denial of her motion for new trial or rehearing. These assignments of error lack merit.

TRIAL COURT'S FAILURE TO AWARD DAMAGES FOR ISSUANCE OF WRIT OF ATTACHMENT

(Defendant's Assignments of Error Nos. 1, 2 & 3)
In several related assignments of error, defendant avers that the trial court erred in *787 failing to award damages and attorney's fees for improvident issuance of writ of attachment. Louisiana Code of Civil Procedure article 3506 provides that the court may allow damages for wrongful issuance of a writ of attachment on a motion to dissolve or on a reconventional demand. For the reasons stated above in our discussion of the trial court's denial of defendant's exception of lack of quasi in rem jurisdiction, this court concludes that the writ of attachment did not issue improvidently as argued by defendant, but instead was properly based upon the nonresidency of defendant. Thus, defendant's claims for damages for improvident issuance of the writ of attachment are without merit. Cf. Baham v. Sutherland, 197 So.2d 345 (La.App. 4th Cir.1967); see also Johnson, Attachment and Sequestration: Provisional Remedies under the Louisiana Code of Civil Procedure, 38 Tul.L.Rev. at 28.
Defendant further contends, however, that the writ of attachment resulted in the actual physical seizure of her home, when only a constructive attachment was proper. Thus, defendant argues, she is entitled to damages for the physical dispossession of her home.
In concluding that defendant was not entitled to such damages, the trial court stated: "[A]lthough the judgment rendered by Judge Guidry on December 14, 1990, modified the attachment from physical attachment to constructive attachment (reserving all damage issues to the trial on the merits), defendant has not shown to the satisfaction of this court that she was ever denied legal access to her property by the plaintiff."
At the time defendant's home was attached, she was not living at the residence. However, at some point during the pendency of these proceedings, defendant did move back into her Baton Rouge home. Moreover, although defendant claimed the writ of attachment resulted in physical dispossession of her home, plaintiff testified that at no time did he actually take physical possession of defendant's property or prevent defendant's access to her home. Considering the foregoing, we cannot conclude that the trial court's evaluations of credibility are unreasonable or that it committed manifest error in concluding that defendant had failed to prove that she was denied access to her property by plaintiff. Arceneaux, 365 So.2d at 1333; Stobart, 617 So.2d at 882. Thus, we find no error in the trial court's conclusion that defendant failed to establish her entitlement to damages under the facts presented herein. These assignments of error lack merit.

CONSTITUTIONAL CHALLENGES

(Defendant's Assignments of Error Nos. 4, 5, 9 & 12)
Defendant contends that the prejudgment attachment of her home on the sole ground of nonresidency violates the due process clauses of the Louisiana and United States Constitutions, as well as her property and privacy rights under Article I, Sections 4 and 5 of the Louisiana Constitution. She argues that Louisiana quasi in rem jurisdiction and related attachment proceedings, as set forth in LSA-C.C.P. arts. 9, 3501, and 3544, are unconstitutional. According to defendant, the statutory scheme allowing the taking of possession and creation of a substantial interest in the seized property of defendant without notice and opportunity to be heard violates her rights guaranteed under the Fourteenth Amendment to the United States Constitution and Article I, Sections 2, 4 and 5 of the Louisiana Constitution. Defendant further contends that because she was subject to the personal jurisdiction of the court, these statutes which allowed the taking of her home without notice or opportunity to be heard are unconstitutional.
The Fourteenth Amendment to the United States Constitution provides, in pertinent part, that "[n]o State shall ... deprive any person of life, liberty, or property, without due process of law."
Article I, Sections 2, 4 and 5 of the Louisiana Constitution provide:
§ 2. Due Process of Law
Section 2. No person shall be deprived of life, liberty, or property, except by due process of law.
§ 4. Right to Property
Section 4. Every person has the right to acquire, own, control, use, enjoy, protect, *788 and dispose of private property. This right is subject to reasonable statutory restrictions and the reasonable exercise of the police power....
§ 5. Right to Privacy
Section 5. Every person shall be secure in his person, property, communications, houses, papers, and effects against unreasonable searches, seizures, or invasions of privacy.... Any person adversely affected by a search or seizure conducted in violation of this Section shall have standing to raise its illegality in the appropriate court.
We first consider defendant's argument that her due process rights were violated because she had no opportunity for a hearing prior to the attachment of her property. In Mitchell v. W.T. Grant Co., 416 U.S. 600, 94 S.Ct. 1895, 40 L.Ed.2d 406 (1974), the United States Supreme Court addressed this issue in a suit involving Louisiana's sequestration procedures as governed by LSA-C.C.P. arts. 3501 and 3571. In finding no due process violation, the Supreme Court reasoned as follows:
Article 3501 authorizes the writ "only when the nature of the claim and the amount thereof, if any, and the grounds relied upon for the issuance of the writ clearly appear from specific facts" shown by verified petition or affidavit. Moreover, in the parish where this case arose, the requisite showing must be made to a judge, and judicial authorization obtained. [The debtor] was not at the unsupervised mercy of the creditor and court functionaries. The Louisiana law provides for judicial control of the process from beginning to end. This control is one of the measures adopted by the State to minimize the risk that the ex parte procedure will lead to a wrongful taking. It is buttressed by the provision that should the writ be dissolved there are "damages for the wrongful issuance of a writ" and for attorney's fees "whether the writ is dissolved on motion or after trial on the merits." Art. 3506.
* * * * * *
Under Louisiana procedure, however, the debtor ... was not left in limbo to await a hearing that might or might not "eventually" occur, as the debtors were under the statutory schemes before the Court in Fuentes [v. Shevin, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972).] Louisiana law expressly provides for an immediate hearing and dissolution of the writ "unless the plaintiff proves the grounds upon which the writ was issued." Art. 3506.
* * * * * *
Our conclusion is that the Louisiana standards regulating the use of the writ of sequestration are constitutional. [The debtor] was not deprived of procedural due process in this case. (Footnotes omitted.)
Mitchell, 416 U.S. at 616-18, 619, 94 S.Ct. at 1904-1905, 1906.
Because the procedural devices available to the plaintiff in seeking a writ of attachment and to the defendant in dissolving a writ of attachment are the same as those applicable to a writ of sequestration, we believe the same rationale applies to support our conclusion that Louisiana attachment procedures fully comport with due process requirements.
In John N. John, Jr., Inc. v. Brahma Petroleum Corporation, 699 F.Supp. 1220, 1221-1222 (W.D.La.1988), aff'd, 878 F.2d 1433 (5th Cir.1989), the United States District Court for the western district of Louisiana determined that Louisiana attachment proceedings are constitutional and are not violative of due process under the same rationale used by the United States Supreme Court in Mitchell to uphold Louisiana sequestration proceedings. While not requiring a pre-attachment hearing, the Louisiana attachment provisions provide sufficient procedural safeguards, by granting defendant the opportunity for an immediate hearing, at which plaintiff must prove the basis for the attachment. Due process can be protected without prior notice. John N. John, Jr., Inc., 699 F.Supp. at 1221.
Indeed, as noted by our colleagues on the Louisiana Fourth Circuit Court of Appeal, the Louisiana sequestration procedure approved by the United States Supreme Court in Mitchell is not drafted to be limited to the certain and narrow circumstances provided for in our attachment procedure. Spencer v. *789 Terebelo, 373 So.2d 200, 203 (La.App. 4th Cir.), writ denied, 376 So.2d 960 (La.1979). We conclude that Louisiana attachment proceedings do not violate due process of law and are constitutional.
Defendant further contends that the exercise of quasi in rem jurisdiction is unconstitutional when the defendant is subject personally to the jurisdiction of the court. In brief, defendant avers that she was subject personally to the jurisdiction of the court, citing the provision of the Louisiana Long Arm Statute, LSA-R.S. 13:3201, pertaining to the transaction of business in the state.[5] However, the Long Arm Statute specifically provides that other methods of obtaining jurisdiction were not repealed by its enactment. LSA-R.S. 13:3207; Junior Money Bags, Ltd. v. Segal, 798 F.Supp. 375, 380 (E.D.La.1990), aff'd, 970 F.2d 1 (5th Cir. 1992). Moreover, due process permits the exercise of jurisdiction over a nonresident defendant through quasi in rem jurisdiction, where, as here, the nonresident has such "minimum contacts" with the forum state "that the maintenance of the suit does not offend `traditional notions of fair play and substantial justice.'" International Shoe Co. v. State of Washington, Office of Unemployment Compensation and Placement, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945); Shaffer v. Heitner 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977); Dosfer Intercontinental Commercial and Investment, Inc. v. Amerwood International, A Division of Hansen-Pringle Company, 468 So.2d 634, 636 (La.App. 4th Cir.1985). Thus, we are unpersuaded by defendant's argument that because she was subject to personal jurisdiction through the Long Arm Statute, exercise of quasi in rem jurisdiction was unconstitutional.
Inasmuch as we find no constitutional violations, defendant's claims under 42 U.S.C. § 1983 must also fail.[6]
These assignments of error lack merit.

CONCLUSION
For the foregoing reasons, the May 4, 1993 judgment of the trial court is affirmed in its entirety. Costs of this appeal are assessed equally between the parties.
AFFIRMED.
FOIL, J., dissents. I feel that the defendant and Gennard Melore should be held liable, in solido, for the price of the ring.
NOTES
[1] Although the petition and its attachments indicate that plaintiff was attempting to collect the outstanding balance on both the bride's and groom's rings, the record as a whole indicates that plaintiff was only seeking to recover the outstanding balance due for the bride's diamond ring.
[2] Although Mr. Melore's name is spelled "Malore" in the third party demand, it is spelled "Melore" elsewhere in the record. The record does not show whether Mr. Melore was served with a copy of this third party demand or if an answer was ever filed on his behalf. However, Mr. Melore did not appear at trial of this matter.
[3] The purchase price of the bride's wedding ring was $9,467.00.
[4] We do not believe that LSA-C.C. art. 1848, which provides that, except in certain circumstances, testimonial or other evidence may not be admitted to negate the contents of an authentic act or act under private signature, applies in the present case. We find that no such writing exists here, inasmuch as the only written evidence pertaining to the sale consists of a simple receipt issued by plaintiff to defendant. Since this document was not signed by both of the parties, it constitutes neither an authentic act nor an act under private signature. LSA-C.C. arts. 1833 and 1837; Richard v. Comeaux, 626 So.2d 507, 511 (La.App. 3rd Cir.1993), writ denied, 93-C-2989 (La. 1/28/94); 630 So.2d 800.
[5] The Long Arm Statute provides, in pertinent part:

A. A court may exercise personal jurisdiction over a nonresident, who acts directly or by an agent, as to a cause of action arising from any one of the following activities performed by the nonresident:
(1) Transacting any business in this state.
[6] 42 U.S.C. § 1983 provides, in pertinent part, as follows:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....